## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FEDERAL DEPOSIT | : | |
| INSURANCE CORP. as | : | |
| RECEIVER for NOVA BANK, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | No. 12-7231 |
| v. | : | |
| | : | |
| HILARY G. MUSSER, | : | |
| | : | |
| Defendant. | : | |

**March _6, 2017**                                          **Anita B. Brody, J.**

### MEMORANDUM

Ordinarily, it is understood that a person who borrows money must eventually return that money, with interest, to the lender. This case falls well outside that ordinary lender-borrower paradigm. Defendant Hilary Musser borrowed $3 million from Nova Bank. All parties agree that Musser remains in possession of the $3 million and that she has not paid interest since August 2010. The Plaintiffs in this case—originally Nova Bank and then, following Nova Bank's failure, the Federal Deposit Insurance Corporation (FDIC) as receiver—seek the return of the $3 million, plus interest. The FDIC's Second Amended Complaint asserts four counts against Musser, each of which is brought in the alternative. ECF No. 71. Counts I and II each allege breaches of different express contracts. Count III alleges breach of an implied in fact contract. Count IV alleges unjust enrichment, assuming the absence of a contract.

Musser believes she is entitled to keep the $3 million and that she owes the FDIC nothing. She argues that the $3 million is merely a fractional offset to the millions of dollars that Nova Bank and its executives fraudulently procured from her. In her Answer, Musser has asserted the following nine affirmative defenses: (1) breach of fiduciary duty; (2) fraud; (3)

1

violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"); (4) setoff; (5) unclean hands; (6) lack of subject matter jurisdiction over Counts I-III; (7) non-execution of the negotiable instrument(s); (8) recoupment; and (9) failure of consideration.  ECF No. 72.

The FDIC moved for summary judgment on Count I, which, if granted, would have disposed of the case.  Pl.'s Mot. Summ. J., ECF No. 73.  The FDIC also moved to strike or, in the alternative, for summary judgment on each of Musser's affirmative defenses.  Pl.'s Mot. to Strike, ECF No. 74.  For the reasons explained below, I denied Plaintiff's Motion for Summary Judgment, without prejudice to raise the motion again after the close of discovery.  I granted in part and denied in part Plaintiff's Motion to Strike or, in the Alternative, for Summary Judgment on Each of Defendant's Affirmative Defenses.

## I.      FACTUAL BACKGROUND

In October of 2005, Musser's lender-borrower relationship with Nova Bank began, when she signed a promissory note and opened a $3 million line of credit with the bank (the "2005 Line").  The 2005 Line was assigned Loan Number 53800028.  Musser subsequently borrowed money using the 2005 Line and paid interest and principal.  By early 2007, Musser had completely paid down the 2005 Line to a balance of zero.  In March of 2007, Nova Bank closed the 2005 Line and re-documented Musser's $3 million line of credit with a new Promissory Note and other loan documents (the "2007 Line").  Musser contends that she did not actually sign any of these documents.  The 2007 Line was assigned Loan Number 53800314.  After the creation of the 2007 Line, Musser knew that she continued to have a $3 million line of credit with Nova Bank, and she drew down on and made payments on her line of credit after March 2007.

Beginning in mid-2009, Musser and Nova Bank began discussing a renewal of Musser's

2

line of credit.  On November 16, 2009, Musser directed her investment advisory firm, Ballamor

Capital Management ("Ballamor"), to transfer the remaining balance of the 2007 Line, $1.97

million, to her personal account at Nantucket Bank.  Ballamor then transferred the $1.97 million

into Musser's Nantucket account.  At that point, Musser had withdrawn the full amount from

Nova Bank.  Two days later, Musser received a letter from Thomas Patterson, a loan officer at

Nova Bank, informing her that Nova Bank had approved a renewal of the 2007 Line, with

modifications to the interest rate and maturity date (the "2009 Line").  The letter also stated, in

relevant part, "If you do not agree to the terms as outlined in this letter or [sic] to remit the

applicable fee, please contact [Thomas Patterson] immediately . . . to receive a loan payoff

statement and make arrangements to pay your balance in full . . . ."  ECF No. 76-1 at 68.  Musser

never objected to the terms of the letter.  From January 2010 to August 2010 Musser made

interest payments at the new interest rate, as stated in the 2009 Line renewal letter.  Since August

2010, Musser has made no payments on the 2009 Line, and she remains in possession of the $3

million.

Musser concedes to all of the facts as stated above.  She contends, however, that she

never signed any of the 2007 Line documents, and that the signatures on those documents are

forgeries.  She argues that these forgeries constitute fraud in the factum as to the 2007 Line and

the 2009 Line, which was a renewal of the 2007 Line.  Musser also alleges that there was fraud

in the factum as to the 2005 Line, because Nova Bank executives entered into an illegal kickback

arrangement to conceal the loan's true interest rate.  Ultimately, Musser faults Barry

Bekkedam—an individual who served as chairman of Nova Bank and, separately, as Musser's

investment advisor with Ballamor—for defrauding her in order to prop up the failing Nova

Bank.[1]

## II.   JURISDICTION

I have subject matter jurisdiction over this matter pursuant to 12 U.S.C. § 1819(b)(2)(A), which, with limited exception, provides for federal court jurisdiction over matters to which the FDIC is a party, and pursuant to 28 U.S.C. § 1331.[2]  I have personal jurisdiction because, at the time this Action was first filed, Musser resided in Pennsylvania, and the lawsuit arises out of Musser's purposeful contacts with Pennsylvania.  Venue is proper because, at the time this Action was first filed, Musser resided in the Eastern District of Pennsylvania, and a substantial part of the events giving rise to the claims in this Action occurred in the Eastern District of Pennsylvania.

## III.   MOTION FOR SUMMARY JUDGMENT ON COUNT I

A. Legal Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law . . . ."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party.  *Id.*  In ruling on a motion for summary judgment, the court must draw all inferences from the facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[1] Bekkedam and Brian Hartline, another former Nova Bank executive, were recently convicted of fraud, in a jury trial in this District before the Honorable C. Darnell Jones II.  *See United States v. Hartline & Bekkedam*, No. 14-cr-548 (E.D. Pa.).

[2] In her sixth affirmative defense, Musser asserts a lack of subject matter jurisdiction as to the breach of contract claims (Counts I-III).  Musser argues that, because these contracts were fraudulent from the outset, no viable legal instrument was transferred to the FDIC, and the FDIC is therefore not a party to any contract.  I address this question in more detail below in Section IV.6.

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  After the moving party has met its initial burden, the nonmoving party must then "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id.* at 322.  Both parties must support their factual positions by: "(A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  The materials in the record that parties may rely on include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  In opposing a motion for summary judgment, the nonmoving party may not "rely merely upon bare assertions, conclusory allegations or suspicions."  *Fireman's Ins. Co. of Newark, N.J. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).

In essence, the inquiry at summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251-52.

B.  Discussion

The FDIC sought summary judgment on Count I, which alleges a breach of the 2009 Line.  The FDIC argued that the November 18, 2009 letter constituted an offer to enter into a new contract, which Musser accepted by retaining the $3 million and paying interest from January 2010 through August 2010.  Musser argued that the 2009 Line was a renewal of the 2007 Line, rather than a new contract, and was therefore subject to any defenses that may have

been asserted against the 2007 Line.  *See Hitchner Wall Paper & Paint Co. v. Shoemaker*, 75 Pa.

Super. 520, 523 (1921) ("[A] renewal note is open to all defenses which might have been made

against the original note.").  Musser further asserted that the 2007 Line is void, due to, among

other reasons, fraud in the factum resulting from a forged signature.  Resolving this dispute over

renewal is a necessary first step to resolving the FDIC's summary judgment motion.

"The question whether a renewal note operates as a discharge of the original note

depends on the intention of the parties."  *Peterson v. Crown Fin. Corp.*, 661 F.2d 287, 291 (3d

Cir. 1981).  The issue of intent is a factual determination to be made by the factfinder.  *See id*. at

291 n.6 (citing *Brown v. Scott*, 51 Pa. 357, 363 (1865)).  Musser identified a number of facts that

show the factfinder could reasonably conclude that the Parties intended the 2009 Line to be a

renewal of the 2007 Line rather than a separate new contract.  Among other things, the 2009

Line bore the same loan number as the 2007 Line, the 2009 Line expressly incorporated all of the

terms of the 2007 Line, but with a modified interest rate and maturity date, and the Parties used

the term "renewal" in discussing the 2009 Line.  The question of the Parties' intent to effect a

renewal is a disputed issue of material fact.  I thus denied the FDIC's motion for summary

judgment on Count I.

### IV.    MOTION TO STRIKE DEFENDANT'S AFFIRMATIVE DEFENSES

A. Legal Standard

Under Rule 12(f) a court "may strike from a pleading an insufficient defense or any

redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  The purpose of

a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays

into immaterial matters."  *Zaloga v. Provident Life & Accident Ins. Co. of Am.,* 671 F. Supp. 2d.

623, 633 (M.D. Pa. 2009).  "A motion to strike under Rule 12(f) is the 'primary procedure' for

objecting to an insufficient affirmative defense." *United States v. Acorn Tech. Fund, L.P.*, No. Civ. A. 03-0070, 2006 WL 237506, at *4 (E.D. Pa. Jan. 31, 2006) (internal citations omitted). Nevertheless, the court "should not grant a motion to strike a defense unless the insufficiency of the defense is 'clearly apparent.'" *Cipollone v. Liggett Grp., Inc.*, 789 F.2d 181, 188 (3d Cir. 1986). "An affirmative defense is insufficient if as a matter of law it cannot succeed under any circumstances." *In re Sunrise Sec. Litig.*, 818 F. Supp. 830, 840 (E.D. Pa. 1993).[3]

B. Discussion

1. *Breach of Fiduciary Duty*

The FDIC moved to strike Musser's affirmative defense of breach of fiduciary duty. The FDIC argued that breach of fiduciary duty is not a valid affirmative defense, but rather a counterclaim, and that Nova Bank owed no fiduciary duty to Musser. *See* Pl.'s Mot. to Strike, at 5-7, ECF No. 74. Musser argued that breach of fiduciary duty is a valid affirmative defense, and that a fiduciary relationship existed between Nova Bank and Musser, by virtue of Musser's relationship with former Nova Bank Chairman Barry Bekkedam. *See* Def.'s Omnibus Opp. Br., at 20-22, ECF No. 77.

As noted by the FDIC, some courts applying the law of other states have found that "a bank's breach of fiduciary duty does not serve as an affirmative defense to an action to enforce a promissory note owed by a bank's customer." *Fifth Third Bank v. Waxman*, 726 F. Supp. 2d 742, 749 (E.D. Ky. 2010) (applying Kentucky law). The FDIC, however, offered no citations to cases addressing this question under Pennsylvania law. And at least some authorities support the

---

[3] The FDIC has styled its motion as a Motion to Strike or, in the Alternative, for Summary Judgment on Each of Defendant's Affirmative Defenses. Although a party may move for summary judgment at any time until 30 days after the close of discovery, the standards of Rule 56 contemplate a developed evidentiary record. Because the Parties have not completed discovery in this case, I will assess the FDIC's arguments under the standard for a motion to strike affirmative defenses. After the close of discovery, the FDIC may, if it so chooses, move for summary judgment on any remaining affirmative defenses.

opposite conclusion: that, in certain circumstances, a breach of fiduciary duty is a valid affirmative defense. *See Worner Agency, Inc. v. Doyle*, 479 N.E.2d 468, 475 (Ill. App. Ct. 1985) ("A defense that a contract is void because it resulted from breach of a fiduciary duty is clearly affirmative in nature because while admitting the *prima facie* validity of the contract, it asserts the new matter of the breach of a fiduciary duty to destroy the contract's validity."); *see also* 17B C.J.S. Contracts § 891 (same).  Although the validity of this defense may be questionable, the FDIC has failed to show that it is clearly insufficient under Pennsylvania law.

The FDIC's second argument faces the same problem.  Under Pennsylvania law, a lender is not ordinarily the fiduciary of a borrower.  *See, e.g.*, *Waye v. Commonwealth Bank*, 846 F. Supp. 321, 325 (M.D. Pa. 1994).  But Musser has pled additional facts regarding her relationship with Nova Bank and Barry Bekkedam, which she argues "transformed" the relationship.  *See* Def.'s Answer, at 14-15, ECF No. 72.  Given the limited evidence currently available, the FDIC has not met its substantial burden of proving that this defense cannot succeed under any circumstances.  I therefore denied the FDIC's motion to strike Musser's affirmative defense of breach of fiduciary duty.

### 2.  Fraud

The FDIC moved to strike Musser's affirmative defense of fraud.  Musser asserted fraud in the factum as to the 2005 Line, the 2007 Line, and the 2009 Line, as well as fraud in the inducement and fraud in the administration of the loan.  *See* Def.'s Answer, at 16, ECF No. 72. The FDIC argues that the alleged facts do not support a defense of fraud in the factum and that federal law bars Musser from asserting a defense of fraudulent inducement against the FDIC. *See* Pl.'s Mot. to Strike, at 11, 13, ECF No. 74.

The law recognizes a distinction between fraud in the factum and fraud in the

inducement.  "Fraud in the factum is defined as 'fraud that procures a party's signature to an instrument without knowledge of its true nature or contents.'"  *FDIC v. Deglau*, 207 F.3d 153, 171 (3d Cir. 2000) (quoting *Langley v. FDIC*, 484 U.S. 84, 93 (1987)).  "Fraud in the inducement, on the other hand, does not involve terms omitted from an agreement, but rather allegations of oral representations on which the other party relied in entering into the agreement but which are contrary to the express terms of the agreement."  *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1300 (3d Cir. 1996).  Courts have traditionally found fraud in the factum only in limited circumstances, such as forgery or "where one party 'surreptitiously substitutes a materially different contract' after the parties had agreed to language in earlier drafts."  *See Giannone v. Ayne Inst.*, 290 F. Supp. 2d 553, 563 (E.D. Pa. 2003) (quoting *Connors v. Fawn Mining Corp.*, 30 F.3d 483, 493 (3d Cir. 1994)).

This distinction between fraud in the factum and fraud in the inducement holds particular relevance in cases, such as this one, in which the FDIC is a party.  Federal law affords the FDIC certain unique protections when acting in its role as receiver for a failed bank.  Specifically, Section 1823(e) of the Financial Institution Reform, Recovery and Enforcement Act of 1989 (FIRREA) provides that "[n]o agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it . . . as receiver of any insured depository institution, shall be valid against the [FDIC] unless such agreement . . . is in writing," and satisfies certain additional documentation requirements.  12 U.S.C. § 1823(e)(1).  In a similar case, the Supreme Court held that this statute bars a debtor from asserting fraud in the inducement as a defense when the FDIC, as receiver, seeks to recover on a promissory note.  *See Langley v. FDIC*, 484 U.S. 86, 94 (1987) (noting that fraud in the inducement renders a promissory note "voidable but not void," and that a voidable title nevertheless constitutes an "interest" under § 1823(e)).  At the same time, the

Supreme Court acknowledged that fraud in the factum "would take the [promissory note] out of § 1823(e), because it would render the instrument void . . . thus leaving no 'right, title or interest' that could be 'diminished or defeated.'" *Id*. at 94-95 (internal citations omitted).

Applying these standards, Musser's affirmative defense of fraudulent inducement, when asserted against the FDIC as receiver, is clearly insufficient as a matter law.  I therefore granted the FDIC's motion to strike that defense.

Musser's fraud in the factum defense is not insufficient.  Musser has asserted allegations of forgery in connection with her affirmative defense of fraud in the factum.  *See* Def.'s Answer, at 16, ECF No. 72.  As noted above, forgery is clearly one of the limited circumstances in which courts have found fraud in the factum.  *See Giannone*, 290 F. Supp. 2d at 563.  The FDIC focuses on Musser's additional allegations that the initial agreement between Musser and Nova Bank contained a fraudulent interest rate and concealed an illegal kickback arrangement.  While these allegations may not rise to the level of a "surreptitious[] substitut[ion] [of] a materially different contract," *id.* (citation omitted), given the limited factual record available at this stage, any possible insufficiency is not clearly apparent.  I therefore denied the FDIC's motion to strike Musser's affirmative defense of fraud in the factum.

### 3.  *Violation of the Pennsylvania UTPCPL*

Musser asserted Nova Bank's violation of the Pennsylvania UTPCPL as her third affirmative defense.  The FDIC moved to strike this defense, asserting three arguments.  First, the FDIC argued that Musser's line of credit was not "primarily for personal, family or household purposes" and therefore was not subject to the UTPCPL.  Second, the FDIC argued that a violation of the UTPCPL can be asserted only as a claim or counterclaim and not as an affirmative defense.  Third, the FDIC argued that federal law, specifically 12 U.S.C. § 1821(j),

barred any remedy that might have been available to Musser under the UTPCPL.  Musser

contended that the line of credit was subject to the UTPCPL, that a violation of the UTPCPL

may be asserted as an affirmative defense, and that remedies were available to her.

The first argument is of particular importance and is potentially dispositive in this case.

The UTPCPL protects "[a]ny person who purchases or leases goods or services primarily for

personal, family or household purposes."  73 P.S. § 201-9.2.  Musser's UTPCPL defense is

based on an alleged violation of Pennsylvania Rule of Civil Procedure 2950, which prohibits

confessions of judgment in the context of consumer credit transactions.  The definition of a

consumer credit transaction under Rule 2950 is virtually identical to the language of the

UTPCPL; the transaction must by "primarily for personal, family or household purposes."  Pa. R.

Civ. P. 2950.  A loan made primarily for investment purposes does not qualify for the protections

of the UTPCPL.  *See, e.g.*, *Lal v. Ameriquest Mortgage Co.*, 858 A.2d 119, 125 (Pa. Super. Ct.

2004) (holding UTPCPL did not apply where the party purchased a property for investment

purposes).

At this stage, there is limited evidence regarding Musser's use of the $3 million line of

credit.  The testimony and pleadings indicate that some of the money was used for investment

purposes and some was used to pay household expenses and the mortgage on Musser's primary

residence.  *Compare* Musser Dep., Ex. A at 40, ECF No. 76 ("[I]t looks like I was probably

buying an investment from another client."), *with id*. at 50 (stating that $50,000 was used to pay

mortgage on primary residence).  Ultimately, Musser will bear the burden of proving the

elements of her affirmative defense, and will need to show that her line of credit was primarily

for personal rather than investment purposes.  But at this stage, for purposes of the motion to

strike, the FDIC has not clearly proven that the line of credit was primarily for investment

11

purposes rather than personal, family or household purposes.

The FDIC's second argument raised the question of whether a violation of the UTPCPL may serve as an affirmative defense, rather than as a claim or counterclaim. Both Parties' briefs rely heavily on principles of statutory construction—the FDIC argued that a remedy not explicitly found in the statute cannot be read into it, while Musser urged that the UTPCPL is a remedial statute that must be liberally construed. Musser has identified some authority indicating that a violation of the UTPCPL *might* serve as an affirmative defense. *See, e.g.*, *In re Carmichael*, 443 B.R. 698, 706 (Bankr. E.D. Pa. 2011). At this preliminary stage, the FDIC has not established that the unavailability of the UTPCPL is clearly apparent.

The FDIC's third argument faced a similar hurdle. The FDIC argued that, even if the UTPCPL serves as a valid affirmative defense, any relief otherwise available to Musser would be barred by § 1821(j) of FIRREA, which provides that a court may not "take any action . . . to restrain or affect the exercise of powers or functions of the Corporation as a . . . receiver." Musser argued that this provision did not extend to affirmative defenses. She cited to two cases that imply that the sweeping jurisdictional bar of § 1821(j) may nevertheless fall short of a party's defenses to claims brought by the FDIC. *See Tri-State Hotels, Inc. v. FDIC*, 79 F.3d 707, 715 (8th Cir. 1996) (noting, in the context of § 1821(j), that "true affirmative defenses may still be asserted"); *Dennis Joslin Co., LLC v. Robinson Broad. Corp.*, 977 F. Supp. 491, 493 (D.D.C. 1997) ("[W]hile 12 U.S.C. § 1821(j) precludes other individuals or entities from bringing suit against the FDIC as conservator or receiver, it is not at all clear that the provision was intended to prevent defendants from raising affirmative defenses to suits brought by the FDIC or those purporting to stand in its shoes."). Again, considering the high bar faced by a party at the motion to strike stage, the FDIC has not established that the defense is clearly insufficient.

12

Ultimately, Musser will need to overcome several factual and legal hurdles to successfully establish an affirmative defense under the UTPCPL, and the validity of the defense remains questionable. Because, at this preliminary stage, the FDIC has not established that the defense is clearly insufficient under any circumstances, I denied the motion to strike.

### 4. Setoff

Musser's affirmative defense of setoff was previously stricken. *See* ECF No. 30. I will address Musser's now-pending Motion for Reconsideration after receiving all of the Parties' briefs.

### 5. Unclean Hands

The FDIC moved to strike Musser's affirmative defense of unclean hands, as applied to Counts I, II, and III. On each of these claims, the FDIC seeks money damages for breach of contract. As the FDIC has correctly noted, "[The] affirmative defense[] of unclean hands . . . [is] equitable in nature and cannot be raised as [a] defense[] to legal claims. A suit for money damages in a breach of contract is a quintessential legal, not equitable, matter." *Frenkel v. Baker*, No. 13-5880, 2015 WL 1725562 (E.D. Pa. 2015) (citing *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558 (1990)). Musser does not appear to contest this issue. Because the defense of unclean hands is insufficient against a legal claim for breach of contract, I granted the FDIC's motion to strike the defense as to Counts I, II, and III only.

### 6. Lack of Subject Matter Jurisdiction

The FDIC moved to strike Musser's affirmative defense that this Court lacks subject matter jurisdiction over Counts I-III (the FDIC's breach of contract claims). In her Answer, Musser asserted lack of subject matter jurisdiction as her sixth affirmative defense. Musser argued that because there was fraud in the factum as to the 2009 Line and the 2007 Line,

rendering them void ab initio, there never existed any legally valid instrument that could be transferred from Nova Bank to the FDIC.  See Def.'s Answer, at 17, ECF No. 72.  The FDIC argued that this defense is duplicative of Musser's fraud in the factum defense.

The FDIC pled federal jurisdiction pursuant to 12 U.S.C. § 1819(b)(2)(A) and 28 U.S.C. § 1331.  Although the FDIC's claims are brought under Pennsylvania law, Section 1819 creates federal arising-under jurisdiction for most lawsuits to which the FDIC is a party.  12 U.S.C. § 1819(b)(2)(A) ("Except as provided in subparagraph (D), all suits of a civil nature at common law or in equity to which the Corporation, in any capacity, is a party shall be deemed to arise under the laws of the United States."); *see also* James M. Wagstaffe, Rutter Group Practice Guide: Federal Civil Procedure Before Trial 2B-39 (Nat'l ed. 2016) ("Congress has declared that actions involving the FDIC 'arise under' federal law even though no federal cause of action or substantial federal claim is at issue.").  It is also clearly settled that "[t]o determine whether [a] claim arises under federal law, we examine the 'well pleaded' allegations of the complaint and ignore potential defenses."  *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003).

The FDIC's Second Amended Complaint alleges that, by retaining the $3 million dollars and failing to pay interest, Musser has breached a valid contract to which the FDIC is the legal successor in interest.  These claims alone are enough to satisfy the jurisdictional pleading standard laid out above.  Because Musser's jurisdictional defense hinges on the validity of the contracts at issue, it cannot be resolved without resolving Musser's fraud in the factum defense. Absent some other jurisdictional defect, subject matter jurisdiction exists unless and until the contracts are proven to be void due to fraud in factum.  If fraud in the factum is established, however, Counts I-III would be immediately barred as a result of the fraud.  Musser's subject matter jurisdiction defense is, in reality, a repackaging of her fraud in the factum defense.

Because Musser's factual and legal arguments on this point are more properly brought under her fraud in the factum defense, I granted the FDICs' motion to strike Musser's sixth affirmative defense as duplicative of her second affirmative defense.[4]

### 7. Lack of Signature

Musser's seventh affirmative defense was nonliabilty on a negotiable instrument in the absence of signature, pursuant to 13 Pa. C.S.A. § 3401(a)(1).  The FDIC moved to strike this defense on the grounds that a promissory note supporting a revolving line of credit, such as the note in question, is not a negotiable instrument because it does not include an unconditional promise to pay a *fixed amount* of money.  *See* Pl.'s Mot. to Strike, at 24, ECF No. 74.  The note in question includes a promise to pay a principal amount of $3 million "or so much as may be outstanding."  Pl.'s Mot. Summ. J., Ex. I, ECF No. 76-8.

The requirement that a negotiable instrument must be for a fixed amount is included in the UCC as adopted by Pennsylvania.  *See* 13 Pa. C.S.A. § 3104 (requiring, among other conditions, that a "'negotiable instrument' means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order").  The FDIC points to a number of out-of-state cases applying this provision of the UCC in similar contexts to conclude that a note failed to satisfy the definition of a negotiable instrument.  *See, e.g.*, *Heritage Bank v. Bruha*, 812 N.W.2d 260, 267-68 (Neb. 2012) (holding that a promissory note that contained a promise to pay $75,000 "or so much as may be outstanding" and "evidence[d] a revolving line of credit" was not for a fixed amount and therefore could not be a negotiable instrument under UCC § 3-104).  The FDIC, however, failed to cite a single federal or state court case applying Pennsylvania law.

---

[4] Pursuant to Federal Rule of Civil Procedure 12(h)(3), both of the Parties and the Court may raise any further issues pertaining to lack of subject matter jurisdiction that become apparent in the future.

Musser argued that Pennsylvania "has never embraced such a cramped definition of negotiability." She pointed to a case from this District involving a promissory note that contained a promise to pay "[f]our hundred thousand . . . or such lesser principal amount as is from time to time outstanding hereunder." *Kawac, Inc. v. Cohen*, No. Civ. A. 96-0371, 1996 WL 635652 (E.D. Pa. 1996). Although the court, in that case, found the note to be a negotiable instrument, the opinion focused on whether the note was payable on demand and did not address the fixed amount requirement. *Id*. at *2-*3.

In one of the few opinions to address this issue, a Pennsylvania court found that a promissory note supporting a line of credit of up to $6,300 was not a negotiable instrument because the note was not for a fixed amount. *See Cadle Co. v. Allshouse*, No. 2023-2006, 2007 WL 5472749 (Pa. Ct. Com. Pl. 2006), *aff'd*, 959 A.2d 455 (Pa. Super. Ct. 2008). As the trial court explained, "[T]he Agreement is not for a fixed amount, but rather it is a line of credit that permitted [the borrower] to draw advances . . . . The Agreement does not contain an unconditional promise to pay a sum certain in money upon demand. Although the Agreement does provide for a borrowing limit, this does not . . . transform the Agreement into a negotiable instrument." *Id*. The note therefore did not satisfy the fixed amount requirement of § 3104.

The promissory note in this case presents the same problem. It supports a revolving line of credit, with a limit of $3 million but no fixed amount. Under Pennsylvania law, the note fails to satisfy the definition of negotiable instrument under §3104. I therefore granted the FDIC's motion to strike Musser's affirmative defense of lack of signature as legally insufficient.

### 8. *Recoupment*

As noted in Section IV.4, Musser's affirmative defense of setoff was previously stricken, and she recently filed a motion for reconsideration. Both Parties appear to acknowledge that the

16

affirmative defense of recoupment is closely related to setoff, and the application of § 1821(d) of FIRREA is likely determinative of the viability of both defenses.  I therefore granted the FDIC's motion to strike the affirmative defense of recoupment, consistent with the Court's prior order striking setoff.  I will, however, reconsider the validity of Musser's recoupment defense and the Parties' relevant briefing as part of my future ruling on the pending Motion for Reconsideration regarding setoff.

### 9.   *Failure of Consideration*

The FDIC moved to strike Musser's ninth affirmative defense, which asserted failure of consideration as to Counts I, II, and III (the breach of contract claims).  All Parties agree that Musser received $3 million from Nova Bank in connection with her line of credit.  The FDIC argued that this money constitutes valid consideration for any of the contracts alleged in its Second Amended Complaint, and that Musser's affirmative defense was therefore insufficient.

"A 'failure of consideration occurs when the consideration bargained for does not pass, in whole or part, to the promisor.'"  *Dahar v. Grzandziel*, 599 A.2d 217, 221 (Pa. Super. Ct. 1991) (quoting *McGuire v. Schneider, Inc.*, 534 A.2d 115 (Pa. Super. Ct. 1987)).  A party asserting failure of consideration as a defense "must show that the consideration *contemplated* was never received."  *Id*. (emphasis in original).  Assuming, arguendo, that the 2007 Line constitutes an otherwise valid contract, it is clear that Musser received the contemplated consideration, namely $3 million dollars.  Under the terms of the promissory note, Musser was to receive a line of credit of up to $3 million, in exchange for future repayment of the principal with interest.  *See* Pl.'s Mot. Summ. J., Ex. I, ECF No. 76-8 (2007 Line Promissory Note).  The note evinces no other contemplated consideration owed to Musser.  Musser's allegations regarding Nova Bank's fraudulent and self-serving conduct—while relevant to certain other defenses that may defeat the

17

validity of the 2007 Line—have no bearing on the question of whether she received the consideration of $3 million.  I therefore granted the FDIC's motion to strike Musser's affirmative defense of failure of consideration as to Count II (the 2007 Line).

The 2009 Line posed a more difficult question.  The Parties agree that Musser was already in possession of the $3 million as of November 16, 2009, two days before the November 18th offer letter was sent to Musser.  As such, the consideration offered to Musser in the 2009 Line was not $3 million, but rather an extension of the maturity date until November 1, 2010, in exchange for continued payment of interest at a new rate and remittance of a renewal fee.  See *See* Pl.'s Mot. Summ. J., Ex. B at 68, ECF No. 76-1 (November 18, 2009 Letter).  This offer presupposes, however, that Musser had a valid legal obligation to repay the $3 million principal by a date certain.  Under Pennsylvania law, "[T]he surrender of a nonexistent legal right is insufficient consideration. However, the surrender or compromise of a doubtful or disputed claim and forbearance to sue thereon is sufficient consideration."  *Pa. State Univ. v. Univ. Orthopedics, Ltd.*, 706 A.2d 863, 873 (Pa. Super. Ct. 1998).  If the 2007 Line was in fact void due to fraud in the factum, as Musser alleges, then the consideration offered by Nova Bank for the 2009 Line constituted the surrender of a nonexistent legal right, and was therefore insufficient.[5]  Because it is not clear that Musser's defense of failure of consideration is insufficient as to the 2009 Line, I denied the FDIC's motion to strike that defense as to Count I (the 2009 Line).  For the same reason, I denied the FDIC's motion to strike as to Count III (contract in implied in fact).[6]

## V.   CONLCUSION

---

[5] If the 2007 Line was void due to fraud in the factum, Nova Bank might still have had a right to recover the $3 million under an equitable unjust enrichment claim.  Indeed, the FDIC continues to assert such a claim in Count IV, as its final fallback.  Nova Bank would not, however, have had a legal right to repayment of the $3 million on a date certain.

[6] The FDIC's pleadings and briefs offered little clarity regarding the extent to which Count III relies on the facts surrounding the creation of the 2009 Line.  I therefore denied the FDIC's motion to strike as to Count III.

For the reasons addressed in Section III, I concluded that there is at least one disputed issue of material fact.  I therefore denied the FDIC's motion for summary judgment on Count I. With regard to the FDIC's Motion to Strike Defendant's Affirmative Defenses, I: (1) denied the motion to strike the affirmative defense of breach of fiduciary duty; (2) granted the motion to strike the affirmative defense of fraud in the inducement and denied the motion to strike the affirmative defense of fraud in the factum; (3) denied the motion to strike the affirmative defense of the UTPCPL; (4) will rule on Musser's Motion for Reconsideration, ECF No. 88, after briefing is complete; (5) granted the motion to strike the affirmative defense of unclean hands as to Counts I, II, and III; (6) granted the motion to strike the affirmative defense of lack of subject matter jurisdiction; (7) granted the motion to strike the affirmative defense of lack of signature; (8) granted the motion to strike the affirmative defense of recoupment, to be reconsidered in connection with the pending motion; (9) granted the motion to strike the affirmative defense of failure of consideration as to Count II and denied the motion to strike as to Counts I and III.

s/Anita B. Brody

_____
ANITA B. BRODY, J.

Copies VIA ECF on _____ to:        Copies MAILED on _____ to:

19